THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 15-00041 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE** |
| JUSTIN ROBERT WHITE CRUZ, | |
| Defendant. | |

Defendant Justin Robert White Cruz ("the Defendant")'s motions to suppress evidence (ECF Nos. 10 & 119) came before this court for an evidentiary hearing that began on July 5, 2016, and ended on July 6, 2016.[1] It was then reopened on August 5, 2016, and the matter was further heard on August 8, 2016.[2] After reviewing the parties' submissions, relevant caselaw and

---

[1] At the evidentiary hearing, when asked by the court, the Defendant stated that he was requesting a *Franks* Hearing. However, after the court ordered the Defendant to direct the court as to where the *Franks* Hearing request was made in writing, and to provide justification for a *Franks* Hearing (*see* ECF Nos. 135 & 137), the Defendant withdrew his *Franks* Hearing request. *See* ECF No. 138.

[2] In an abundance of caution, the court reopened the evidentiary hearing on August 5, 2016 to create a more complete record, as the court did not have before it what transpired between the time the package arrived on island in the early hours of July 16, 2015, and the time Officer Palacios received a call from UR Market. At the evidentiary hearing prior to reopening the case, evidence was presented that the mail clerk from UR Market called Officer Palacios at approximately 1:00 p.m. on July 16, 2015. At the reopened hearing, the mail clerk testified that she started her shift at 2:00 p.m. and called Officer Palacios thereafter. No evidence was presented as to the exact time that she called Officer Palacios, but evidence was presented at the hearing prior to reopening that Officer Palacios arrived at UR Market and examined the packages at approximately 3:00 p.m. Accordingly, even assuming *arguendo* that the court did not *sua sponte* reopen the hearing, and instead used the most conservative time of 1:00 p.m. as the beginning of the detention of the packages, the court would still find that there is sufficient evidence on the record

1

authority, and having heard the testimony of witnesses and argument from counsel, the court took the matter under advisement. For the reasons more fully discussed herein, the court hereby **DENIES** the Defendant's motions to suppress.

## I. CASE OVERVIEW

### A. Procedural Background.

On July 29, 2015, an Indictment was returned by the grand jury charging the Defendant with the following offenses: Count I – Conspiracy to Distribute Methamphetamine; Count II – Attempted Possession with Intent to Distribute Methamphetamine; and Count IV – Possession with Intent to Distribute Methamphetamine. *See* Indictment, ECF No. 4.

On November 18, 2015, a Superseding Indictment was returned. *See* ECF No. 60. The Superseding Indictment added Count V – Tampering with a Witness by Corrupt Persuasion; Count VI – Obstruction of a Criminal Investigation by Bribery; and a forfeiture allegation. *Id.*

On September 8, 2015 and April 29, 2016, respectively, the Defendant filed the instant motions to suppress. ECF Nos. 10 & 119.

### B. Factual Findings.

The following witnesses testified for the United States: Drug Enforcement Agency ("DEA") Task Force Officer Jeremiah Cruz ("Officer Cruz"); DEA and United States Postal Service Task Force Officer Jeffrey Palacios ("Officer Palacios"); United States Postal Inspector Deborah Lee Epps ("Postal Inspector Epps"); Guam Customs and Quarantine Officer Russell James Maratita ("Officer Maratita"); Guam Customs and Quarantine Officer Christopher J. Baza

---

for this court to deny the motions to suppress. The Ninth Circuit has upheld as reasonable much longer delays, to include finding reasonable a five-day detention of a package while officers investigated the package to establish probable cause. *United States v. Aldaz*, 921 F.2d 227, 231 (9th Cir. 1990); *see also United States v. Van Leeuwen*, 397 U.S. 249, 252–53 (1970) (holding reasonable twenty-nine hour detention); *United States v. Hernandez*, 313 F.3d 1206, 1212 (9th Cir. 2002) (holding reasonable one-day detention); *United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (holding reasonable six-day detention); *United States v. Lozano*, 623 F.3d 1055, 1061 (9th Cir. 2010) (holding reasonable twenty-two hour detention).

2

("Officer Baza"); Ms. Chona M. Aguilar; and DEA Task Force Officer Adam Gray ("Officer Gray"). The United States submitted six exhibits, which were admitted at the hearing. The Defendant called Officer Cruz to testify on the issue of standing. The Defendant submitted one exhibit, which was admitted at the hearing.

On July 16, 2015 at approximately 2:00–3:00 a.m., two U.S. Priority Mail Packages were scanned in upon arrival by the postal employees at the postal facility in Barrigada, Guam, both bearing the printed recipient address of "James Sullivan, PMB 1101 111 Chalan Balako, Dededo, Guam, 96929" (hereinafter "SULLIVAN" and "SULLIVAN2" packages). Sometime later that morning or early afternoon and before 2:00 p.m., the SULLIVAN and SULLIVAN2 packages were delivered via U.S. postal truck to UR Market in Dededo, Guam. UR Market is a grocery store that is also a commercial mail receiving agency.

At approximately 2:00 p.m., Ms. Chona Aguilar, who was employed as a clerk at UR Market, began her shift. As part of her duties, Ms. Aguilar sorted the mail after it arrived at UR Market and distributed the letters and packages to the various postal mail boxes ("PMBs") that people have leased at UR Market. If a package was too large to fit into a PMB, she would leave a notice in the PMB for the customer to come to the counter to retrieve their package. Ms. Aguilar had been previously instructed to call Officer Palacios if any packages arrived for PMB 1101. Sometime between 2:00–3:00 p.m., Ms. Aguilar discovered, while sorting the mail, that two packages had arrived for PMB 1101: the SULLIVAN and SULLIVAN2 packages. She then called Officer Palacios to inform him of this fact, who asked her to set the packages aside for him to examine. Ms. Aguilar did as instructed.

At approximately 3:00 p.m., Officer Palacios arrived at UR Market and examined the packages, and brought them to the DEA Office in Hagatna for further inspection. At the DEA Office, Postal Inspector Epps inspected the packages and began to prepare affidavits for search

3

warrant applications. During this timeframe, Officer Palacios called the Guam Customs and Quarantine Agency (GCQA) to arrange a Drug Detection Dog Unit narcotics sniff of the SULLIVAN and SULLIVAN2 packages at the postal facility in Barrigada. Officer Palacios brought the packages to the Barrigada postal facility sometime between 4:00–4:30 p.m. for the dog sniff.

K9 handler Officers Maratita and Baza arrived at the Barrigada postal facility with their assigned Drug Detection (DD) dogs "Gauge" and "Kay," around 4:15 p.m. The DD dog sniffs of each of the packages were conducted in the same manner: by lining up several packages in a row on the floor, and telling the DD dog to "find it." The DD dog then walked along and sniffed the packages until it "alerted" to a package, which indicated that the package contained narcotics. "Gauge" gave a positive alert to the SULLIVAN2 package at approximately 4:35 p.m., and "Kay" gave a positive alert to the SULLIVAN package at approximately 4:57 p.m. Both "Gauge" and "Kay" were trained to detect controlled substances and have a 95% success rate in detection in the field. Sometime after 5:00 p.m. that day, Postal Inspector Epps completed the search warrant applications. Both of the federal judges were off-island at that time, and therefore Postal Inspector Epps went before a designated federal judge, Judge Vernon P. Perez ("Designated Judge Perez"), the next morning to have him review the search warrant applications.

On July 17, 2015, Designated Judge Perez, after determining that there was sufficient probable cause, signed the search warrants for the SULLIVAN and SULLIVAN2 packages, at 8:50 a.m. and 8:54 a.m., respectively.

In her sworn affidavits supporting the search warrant applications, Postal Inspector Epps supplied reasons why there was probable cause to search the packages: (1) the packages were sent via Priority Mail, common for packages containing controlled substances because the sender

4

is able to keep track of the shipment; (2) the packages were mailed from California, which is a known source state for controlled substances mailed to Guam; (3) a confidential source provided information regarding the illegal shipment of narcotics, stating that narcotics would be concealed inside work boots and work clothing and concealed within USPS Priority Mail packages. This was corroborated by the USPS Customs Declaration and Dispatch Note, which described the contents of the SULLIVAN and SULLIVAN2 packages as, "Wrangler Work Boots, Wrangler Work Shirts, Wrangler Work Pants"; (4) Postal Inspector Epps further included in the affidavit that the confidential source also advised that the mailer of the shipments utilized a marker on the narcotics packages that can only be detected under black light. Postal Inspector Epps stated that the packages had been placed under a black light, which revealed markings on the packages which were undetectable without a black light; and (5) Postal Inspector Epps stated that DD dogs "Gauge" and "Kay," alerted to the presence of narcotics in the packages.

     On July 17, 2015, after Designated Judge Perez signed the two search warrants at 8:50 a.m. and 8:54 a.m., respectively, agents executed the warrants, and searched the packages. The agents then obtained a tracking warrant for the SULLIVAN package, which Designated Judge Perez signed at 2:32 p.m. on July 17, 2015. Agents then executed a controlled delivery of the packages at UR Market later that day. Agents surveilled the market and observed the Defendant and a female arrive at UR Market, and thereafter observed the female pick up the packages and get back into the car with the Defendant.

     Agents subsequently obtained a search warrant for the Defendant's residence, which Designated Judge Perez signed at 7:46 p.m. on July 17, 2015. Agents executed the search warrant of the residence and seized the following items: the SULLIVAN package; the SULLIVAN2 package; approximately nine pounds of a crystal like substance that field tested presumptive positive for methamphetamine; over $400,000 in U.S. currency; and three firearms.

## II. STANDARD OF REVIEW

In an evidentiary hearing on a motion to suppress, the Defendant has the burden of persuasion, in establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). The prosecution, as the proponent of the evidence, must bear the burden of proving its admissibility. *See United States v. Coades*, 468 F.2d 1061, 1064 (3d Cir. 1972); *United States v. Colbert*, No. 89-310, 1990 WL 5200 at *1 (D.N.J. January 23, 1990) (citing *Katz v. United States*, 389 U.S. 347 (1967)).

On a motion to suppress, the controlling burden of proof imposes no greater burden than proof by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III. DISCUSSION

### A. Standing

The Government asserts that the Defendant does not have standing under the Fourth Amendment to challenge the search of the SULLIVAN and SULLIVAN2 packages because neither package was addressed to the Defendant: they are both addressed to a "James Sullivan." Moreover, PMB 1101 is not registered to the Defendant.

At the evidentiary hearing, for purposes of the motions to suppress only, the Defendant supplied a sworn declaration to the court that the SULLIVAN and SULLIVAN2 packages were intended for him. *See* Def. Ex. 1. A defendant may testify at a suppression hearing to establish that he has standing to object to a search. *See, e.g.*, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994); *United States v. Diaz*, 2006 WL 2990219, at *1 n.1 (N.D. Cal. Sept. 28, 2006). Based on the Defendant's sworn declaration, the court finds that the Defendant has a

6

Case 1:15-cr-00041 Document 156 Filed 09/02/16 Page 6 of 15

legitimate expectation of privacy in the SULLIVAN and SULLIVAN2 packages.[3] Thus, he has standing to object to the searches of the packages.

### B. The Defendant's Arguments for Suppression

The Defendant argues the following: (1) Officer Palacios did not have reasonable suspicion for the initial detention of the SULLIVAN and SULLIVAN2 packages; (2) the officers unreasonably delayed obtaining probable cause sufficient to subsequently detain the SULLIVAN and SULLIVAN2 packages ; (3) Designated Judge Perez lacked probable cause to issue the search warrants of the SULLIVAN and SULLIVAN2 packages; and (4) the "Justine Cruise package," and all seized evidence and fruits from that search should be suppressed because of unreasonable delay in obtaining the search warrant.

#### 1. Reasonable Suspicion for the Initial Detention.

The Defendant argues that this court should suppress the evidence seized from the searches of the SULLIVAN and SULLIVAN2 packages because the information available to the postal and law enforcement authorities does not rise to the level of reasonable suspicion to initially detain the packages for further investigation.

The Fourth Amendment of the U.S. Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

---

[3] The Ninth Circuit has not ruled on the issue of whether an individual has a legitimate expectation of privacy in a package that is not addressed to him. Four other circuits have so held, and one has stated in reasoned dicta. *See United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994); *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988); *United States v. Givens*, 733 F.2d 339, 341–42 (4th Cir. 1984); *see United States v. Lewis*, 738 F.2d 916, 920 & n. 2 (8th Cir.1984); *see also United States v. Pitts*, 322 F.3d 449, 460 (7th Cir. 2003) (Evans, J., concurring). One other circuit has recognized but declined to decide the issue. *See United States v. Robinson*, 390 F.3d 853, 870 n. 24 (6th Cir. 2004). In *United States v. Lozano*, 623 F.3d 1055 (9th Cir. 2010), Judge O'Scannlain addressed the issue in a concurring opinion. In *Lozano*, the package was addressed to a "Bill Corner," at defendant Lozano's P.O. Box. *Id.* at 1058. After the post master determined that no "Bill Corner" lived in the town of 4,000 people, he sent it to Anchorage, per the instructions of a postal inspector. *Id.* The majority did not differentiate between an addressee and a recipient, but Judge O'Scannlain discussed the issue, noting that the Ninth Circuit has not decided whether an individual has a legitimate expectation of privacy with respect to a package that is not addressed to him, except for in an unpublished, nonprecedential decision. *Id.* at 1062 (O'Scannlain, J., concurring). However, he asserted that "[he] would follow the weight of authority (from the other circuits), and hold that an individual does not have a legitimate expectation of privacy in a package not addressed to him." *Id.* at 1063.

seizures, shall not be violated[.]" U.S. CONST. AMEND. IV. An addressee's Fourth Amendment possessory interest is in the timely delivery of the package. *See Hernandez*, 313 F.3d at 1210; *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160 (9th Cir. 2007).

Postal inspectors may initially detain a package to conduct an investigation "if they have a reasonable and articulable suspicion" that it contains contraband or evidence of illegal activity. *Aldaz*, 921 F.2d at 229. To determine whether reasonable suspicion exists, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In evaluating the totality of the circumstances, the court may not consider each factor in isolation. *See id.* at 274. Reasonable suspicion may exist even if each factor, standing alone, is susceptible to an innocent explanation. *Id.* at 277–78.

Furthermore, while the determination of reasonable suspicion is exceedingly fact-specific, the circumstances taken together must be evaluated as they would be "understood by those versed in the field of law enforcement." *Hernandez*, 313 F.3d at 1210 (9th Cir. 2002) (internal quotations omitted). Such an approach allows officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 1210–11 (internal quotations omitted).

In the present case, Ms. Chona Aguilar testified that when she arrives at UR Market at the beginning of her shift at 2:00 p.m. (which is when she would have begun her shift on July 16, 2015), it is her normal practice to begin her shift by taking the mail that had arrived earlier in the day from the U.S. postal truck and sorting it into the PMBs. First, she sorts letters into the various PMBs, and then she sorts the packages into the PMBs (or places a notice that a package is waiting at the counter, if the package is too large to fit into the PMB). However, on July 16,

8

2015, Ms. Aguilar found packages postmarked for PMB 1101 (the SULLIVAN and SULLIVAN2 packages), and phoned Officer Palacios, as she was instructed. Officer Palacios then, over the telephone, instructed her to detain the packages until he could arrive at UR Market to examine them. Because no evidence was presented as to the exact time that Ms. Aguilar called Officer Palacios, and the SULLIVAN and SULLIVAN2 packages would otherwise have been timely delivered on July 16 between 2:00 p.m. and 11:00 p.m. (when the market closes), the court will use the most conservative time and find that the "initial detention" of the packages requiring reasonable suspicion began at 2:00 p.m.

The court finds that when Officer Palacios instructed Ms. Aguilar over the telephone to detain the SULLIVAN and SULLIVAN2 packages, he had reasonable suspicion that the packages contained contraband or evidence of illegal activity. Officer Palacios had previously participated in an investigation into the Defendant with several law enforcement officers, and learned that the Defendant was receiving drugs through the mail, using different addresses to receive the drugs.[4] Officer Palacios also knew from the investigation that PMB 1101 was associated with the Defendant's girlfriend. He also knew from the investigation that confidential informants stated that the packages contained work boots, work clothing, and drugs, and that the packages would have markings on the outside visible only under black light.

Therefore, in the present case, viewing the totality of the circumstances, this court finds that the detaining officer had a particularized and objective basis for suspecting legal wrongdoing to initially detain the SULLIVAN and SULLIVAN2 packages. *Hernandez*, 313 F.3d at 1210 (internal quotations omitted).

---

[4] The collective knowledge doctrine applies to impute Officer Palacios, the detaining officer, with the knowledge of all of the law enforcement agents who were working together in an investigation into the Defendant but had not explicitly communicated the facts each had independently learned. *See, e.g.*, *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007).

9

For the foregoing reasons, the court DENIES the motion to suppress the evidence from the SULLIVAN and SULLIVAN2 packages because it finds reasonable suspicion existed to initially detain the packages for further investigation.

### 2. Reasonableness of the Delay in Obtaining Probable Cause for the Subsequent Detention.

The Defendant next argues that the United States' delay in obtaining probable cause for the subsequent detention of the SULLIVAN and SULLIVAN2 packages was unreasonable.[5]

"Even if the initial seizure of a mailed package is based on reasonable suspicion, a prolonged detention is unreasonable under the Fourth Amendment." *Lozano*, 623 F.3d at 1061 (internal quotations omitted). The relevant time period is that between the initial detention and that at which probable cause is developed because "[p]robable cause is sufficient to support the subsequent detention of the package." *Id.* (internal quotations omitted). There is no bright line rule as to a specific detention period. Rather, assessing a reasonable detention is on a case-by-case basis, with the court having to examine each component of the delay. *Aldaz*, 921 F.2d at 230.

The Ninth Circuit has upheld as reasonable a five-day delay in obtaining a dog sniff arising because of the difficulty of travel for canines in Alaska. *Aldaz*, 921 F.2d at 231; *see also Hernandez*, 313 F.3d at 1213 (holding reasonable one-day delay in obtaining a dog sniff); *Lozano*, 623 F.3d at 1061 (holding reasonable twenty-two hour delay in obtaining a dog sniff). Here, the delay was less than three hours. The packages arrived at UR Market on July 16, 2015 sometime before 2:00 p.m. The earliest the packages could have been delivered to PMB 1101 was at 2:00 p.m. that day, when Ms. Aguilar began her shift and, instead of delivering the SULLIVAN and SULLIVAN2 packages, detained them as instructed telephonically by Officer

---

[5] The Defendant also challenges the delay in obtaining probable cause for the search warrant issued for the search of the August 2012 "Justine Cruise package." The court will discuss the "Justine Cruise package" *infra*.

10

Palacios.

At approximately 3:00 p.m., Officer Palacios arrived at UR Market and examined the packages. He was able to corroborate the informants' information about the clothing when he saw that the customs forms attached to the SULLIVAN and SULLIVAN2 packages described the contents of the packages as "Wrangler Work Boots, Wrangler Work Shirts, Wrangler Work Pants." After 3:00 p.m., Officer Palacios brought the packages to the DEA Office in Hagatna for further inspection. At the DEA Office, Officer Palacios called GCQA to arrange a Drug Detection Dog Unit narcotics sniff of the packages at the postal facility in Barrigada. The canines' respective "alert[s]," which "create probable cause," *Hoang*, 486 F.3d at 1160 n. 1, occurred at 4:35 p.m. and 4:57 p.m. that day, less than three hours later. The court is satisfied that the length of time between the initial detention of the two packages beginning at 2:00 p.m. and the subsequent detention when probable cause was established by the canine alerts at 4:35 p.m. and 4:57 p.m. was not unreasonable.

For the foregoing reasons, the court DENIES the motions to suppress evidence in the SULLIVAN and SULLIVAN2 packages because it is satisfied that the length of detention between the initial seizure at 2:00 p.m. and the development of probable cause at 4:35 p.m. and 4:57 p.m. was not unreasonable.

### 3. Probable Cause to Issue Search Warrants.

The Defendant next argues that Designated Judge Perez did not have sufficient probable cause to issue search warrants for the SULLIVAN and SULLIVAN2 packages, and thus the searches of the packages violated the Fourth Amendment.

The Fourth Amendment states, in pertinent part: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. The probable cause

11

standard for a search warrant is whether, based on common sense considerations, there was "a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014) (internal quotations omitted).

In reviewing a search warrant on probable cause grounds, the court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *See, e.g.*, *Crowe v. City of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010). Probable cause is established by the totality of the circumstances. *Id.* In examining a judge's determination of probable cause, the court must pay "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

In the present case, the totality of the circumstances show that the warrant applications and affidavits were sufficient for Designated Judge Perez to find probable cause existed to search the SULLIVAN and SULLIVAN2 packages. In the affidavits, Postal Inspector Epps states that her examination of the packages identified certain indicators that exist when persons use the mail system to send prohibited drugs. Those indicators include the packages are being sent by Priority Mail and they come from California, a known drug source state. Further, Postal Inspector Epps had received a tip from a confidential source[6] that packages containing work boots and work clothing will contain narcotics. Moreover, the confidential source had stated that such packages would have hidden marks on the outside that were visible only under a black light. As part of the warrant application, Postal Inspector Epps provided pictures of the packages' customs labels, which stated that the packages contained work boots and clothing. She also stated in the affidavits that she had examined the packages under a black light and discovered hidden markings. Finally, the affidavits each state that a DD dog conducted a narcotics sniff of the package that had resulted in a positive alert for the presence of narcotics. Postal Inspector Epps stated in the respective affidavits that the dogs, "Kay," and "Gauge" each have a 95% success

---

[6] Postal Inspector Epps' affidavits for the search warrants did not differentiate between the two confidential informants and instead referred to the information as being supplied by a "CS" or confidential source.

12

rate when giving positive alerts in the field. Therefore, under the totality of the circumstances, and based on common sense considerations, there was a fair probability that contraband or evidence of a crime would be found in the packages. *Ruiz*, 758 F.3d at 1148 (internal quotations omitted).

Thus, Designated Judge Perez was correct to determine the existence of sufficient probable cause to issue the search warrants.

Defendant counters that the confidential source's tip was "non-specific" to the Defendant, and therefore was unreliable. When a search warrant is based on a tip from an informant, if the tip provides detailed predictive information about future events that is corroborated by police observation, it may be considered reliable. *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006). In the present case, the confidential source predicted that both packages would contain drugs, work boots and clothes and show markings on the outside of the packages visible only under a black light. This tip was corroborated by independent police observation. Just as the confidential source had told agents, Postal Inspector Epps found that the customs labels for the SULLIVAN and SULLIVAN2 packages state the packages both contained work boots and clothing. In addition, she found that when she placed the packages under a black light, she saw hidden markings, just as the confidential source had predicted. Moreover, the DD dogs alerted to the presence of narcotics in the packages, again independently verifying the confidential source's tip. Therefore, the tip was reliable.

For the foregoing reasons, the court finds that the tip provided by the confidential informant provided detailed predictive information about future events which were in fact corroborated by the observations of law enforcement, and therefore, is considered reliable.[7]

---

[7] The Defendant in the moving papers contended that there was no proof that Designated Judge Perez was a designated judge as authorized by 48 U.S.C. § 1424b. However, Judge Perez's designation was subsequently supplied to the parties and the Defendant withdrew the argument.

13

### 4. Legality of the Search of the "Justine Cruise" Package.

The Defendant challenges the legality of a package searched in August 2012 (the "Justine Cruise package"). The Defendant argues that the delay in obtaining the search warrant issued for the search of the Justine Cruise package was unreasonable, and thus the search, the evidence obtained, and all fruits from that search must be suppressed, which would include the search of the SULLIVAN and SULLIVAN2 packages.

The court need not examine whether the delay in obtaining the search warrant issued for the search of the Justine Cruise package was unreasonable, because the United States represented that it will not use any evidence resulting from the Justine Cruise package search in its case in chief. Moreover, it states that the confidential informants who provided information contained in the affidavits supporting the searches of the SULLIVAN and SULLIVAN2 packages were from cases unrelated to the Justine Cruise package. Further, the United States represents that all other sources of information and evidence that the United States used to investigate the present case, to include an interview with the Defendant's girlfriend at the DEA Office in 2014, and Dwayne Cruz's arrest for possession of two packages containing methamphetamine in 2013,[8] are also unrelated to the Justine Cruise package. Therefore, no evidence or information from the Justine Cruise package search was or will be used in the instant case, and thus Defendant's argument is irrelevant.

For the foregoing reasons, the court finds the motion to suppress the search of the Justine Cruise package is irrelevant and therefore DENIES the motion to suppress the Justine Cruise package.

---

[8] Dwayne Cruz is the Defendant's cousin, who was convicted and sentenced by this court in Criminal Case No. 13-00011.

14

## IV. CONCLUSION

In Defendant's motions to suppress, he moves the court to quash the warrants in this case and suppress any evidence seized as a result of the warrants. Based on the discussion above, the court hereby **DENIES** said motions. The court denies suppression of the SULLIVAN and SULLIVAN2 packages and any and all evidence resulting from the packages. Officer Palacios had reasonable suspicion to initially detain the SULLIVAN and SULLIVAN2 packages; the delay in obtaining probable cause to subsequently detain the SULLIVAN and SULLIVAN2 packages was reasonable; Designated Judge Perez had sufficient probable cause to issue the search warrants of the SULLIVAN and SULLIVAN2 packages; and the "Justine Cruise package," and all seized evidence and fruits from that search should not be suppressed because no evidence or information from the Justine Cruise package search was or will be used in the instant case.

The court will issue a separate trial scheduling order.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
  **Chief Judge**
**Dated: Sep 02, 2016**